```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
MARSHA AZAR, MICHAEL HAKIMI, YOSEF HAKIMI,
and CENTURY VENTURES LIMITED an Israeli
limited liability corporation,

                Plaintiffs,

      -against-                              05 CV 8370 (KMW)
                                             MEMORANDUM OPINION
1-800 DOCTORS, INC., f/k/a 1-800                 AND ORDER
DOCTORS.COM, INC.,

                Defendant.
--------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

    Marsha Azar, Michael Hakimi, Yosef Hakimi, and Century Ventures Limited (collectively "Plaintiffs") have filed a breach of contract action against 1-800 Doctors, Inc. ("Defendant"), alleging that Defendant failed to redeem Plaintiffs' stock pursuant to the terms of a stock purchase agreement between the parties.  For the reasons stated below, Plaintiffs' motion for partial summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

**I.   Background**

    The facts material to these motions are not in dispute.  On or about December 10, 1999, Plaintiffs purchased preferred stock from Defendant pursuant to a stock purchase agreement (the "Agreement").  (Pls.' Rule 56.1 Statement  ¶ 1.) The Agreement contains a provision (the "Mandatory Redemption Provision"), which states that if Defendant fails to consummate an initial public offering ("IPO") within two years of issuing the preferred

stock, Plaintiffs may require Defendant to redeem their shares for cash.  (Id. ¶¶ 3, 4.)

To date, Defendant has not consummated an IPO.  (Id. ¶ 9.) On October 20, 2004, Plaintiffs asked Defendant to redeem their stock pursuant to the Mandatory Redemption Provision of the Agreement. (Id. ¶¶ 10-13.)  Defendant denied Plaintiffs' request, on the ground that doing so would "impair" its capital and thereby violate Delaware law. (Id. ¶¶ 14-17.)  Plaintiffs then filed suit in this Court.  Both parties agree that venue is proper and that Delaware law governs this dispute.[1]  The parties have now filed cross-motions for summary judgment.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[1] 1-800 Doctors ("Defendant") is a Delaware corporation with its principal place of business in New Jersey. (Amended Complaint ¶ 6.) Plaintiff Century Ventures is an Israeli corporation with its principal place of business in Israel. (Id. ¶ 5.) Plaintiffs Azar, M. Hakimi, and Y. Hakimi are residents of Illinois. (Id. ¶¶ 2-5.) The amount in controversy exceeds $75,000. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. (Id. ¶ 9.)

The Agreement contains the following provision:

> This Agreement will be construed and enforced in accordance with and governed by the laws of the State of Delaware . . . . Each of the parties consents to the exclusive jurisdiction of the U.S. District Court sitting in the Southern District of the State of New York sitting in Manhattan in connection with any dispute arising under this Agreement.  (Id. ¶ 11)

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005). "[S]ubstantive law will identify which facts are material," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a "material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).

**III. Discussion**

The parties dispute whether the Mandatory Redemption Provision of the Agreement requires Defendant to redeem Plaintiffs' stock. To resolve that dispute, the Court must address a more abstract question: under Delaware law, may Defendant redeem its stock if its capital is impaired at the time a stockholder requests redemption? Plaintiffs agree that Defendant's obligation to redeem is dependent upon whether its capital is impaired, but contend that the relevant point for measuring whether a corporation's capital is impaired is the time at which the parties entered the Agreement. Defendant argues that, under Delaware law, the point at which to measure impairment is the date upon which Plaintiff requested redemption. The Court agrees with Defendant.

Under Delaware law, a corporation's capital is "impaired" when funds necessary for redemption exceed the corporation's "surplus." Del. Code Ann. tit. 8, § 154 (2007). A corporation's "surplus" is "[t]he excess, if any, at any given time, of the net assets of the corporation over the amount so determined to be capital." Id. A corporation whose capital is impaired generally may not redeem its stock.[2]

The plain language of the statute makes it clear that the relevant point at which to measure whether a corporation's capital is impaired is the time a stockholder requests redemption. Id. § 160(a) ("no corporation shall . . . [p]urchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired"); see Klang v. Smith's Food & Drug Ctrs., Inc., 702 A.2d 150,154-55 (Del. 1997) (using the date the corporation repurchased its stock to measure whether its capital was impaired under Del. Code Ann. tit. 8, § 160).

---

[2] Under Delaware law:

(a) Every corporation may purchase, redeem, receive, take or otherwise acquire, own and hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares; provided, however, that no corporation shall:

(1) Purchase or redeem its own shares of capital stock for cash or other property <u>when the capital of the corporation is impaired</u> or when such purchase or redemption would cause any impairment of the capital of the corporation.

Del. Code Ann. tit. 8, § 160(a)(1) (2007) (emphasis added).

Plaintiffs argue that the Agreement falls under an amendment to the governing statute, which provides that, "nothing in this subsection shall invalidate or otherwise affect a note, debenture, or other obligation" given by a corporation as consideration for stock, "if at the time such note, debenture, or obligation was delivered by the corporation[,] its capital was not then impaired." Del. Code Ann. tit. 8, § 160(a)(1).[3] More simply, where a transaction involves notes, debentures, or obligations, a court should determine impairment at the time the corporation issues the instrument. Id. Plaintiffs' argument fails because the amendment, by its terms, applies only to notes, debentures, or obligations, not preferred stock agreements.[4]

---

[3] The reason the dates of impairment viewed as relevant differ (1) for creditors, and (2) for shareholders is as follows.

The purpose of Del. Code Ann. tit. 8, § 160(a)(1) is to protect creditors from fraud. In re Reliable Mfg., 703 F.2d at 1001. One way the statute protects a creditor from fraud is by its provision that when a corporation issues a note, debenture, or obligation, the corporation may not later claim that it is impaired as a way to avoid its obligations to holders of such instruments. See id.

A second way the statute protects a creditor from fraud is by its provision that a corporation that is already impaired may not repurchase its shares from stockholders; to do so would place the resources of a troubled corporation in the hands of its shareholders at the expense of its creditors. See id.; see also, In re Tichenor-Grand Co., 203 F. 720, 721 (S.D.N.Y. 1913) (Hand, J.) (stating that permitting an impaired corporation to acquire its own stock amounts to "a method of secret distribution, against the deceit of which its creditors have absolutely no means of protection [because] [t]he fund which they have the right to rely upon has been surreptitiously taken from them.").

Both provisions of the statute operate to prevent a corporation from favoring its shareholders over its creditors.

[4] Plaintiffs argue that the Agreement may constitute an "obligation" under Delaware law because "undefined words in a statute must be given their ordinary, common meaning." New Castle County Dep't of Land Use v. Univ. of Del., 842 A.2d 1201, 1207 (Del. 2004).

5

See, e.g., Halmi v. Qintex Entm't, Inc., 8 F.3d 1353, 1357 (9th Cir. 1993) (holding that the amendment did not apply where plaintiff attempted to invoke a contractual right to force defendant corporation to repurchase its stock); United States v. Evans, 375 F.2d 730, 731 (9th Cir. 1967) ("Stock is an equity; it represents an ownership interest.  It is to be distinguished from obligations such as notes or bonds which are not equities, and represent no ownership interest.").

The Seventh Circuit's reasoning in Reliable Manufacturing, the decision upon which Plaintiffs rely primarily to support their argument, does not advance their argument.[5]  In Reliable Manufacturing, the Seventh Circuit concluded that, under Delaware law, a corporation's guaranty of its stock purchase price was valid so long as its capital was not impaired at the time it issued the guaranty.  703 F.2d at 1002.  The status of the corporation's capital at the time the guaranty was enforced was not relevant to the analysis.  See id. at 1001-02.  Central to the Seventh Circuit's conclusion, however, was its recognition

---

Plaintiffs' invocation of this familiar canon is inapposite; their definition of the word "obligation" is so broad that the amendment's exception would swallow the rule.  See Qintex 8 F.3d at 1355-56.

[5] Plaintiffs' citation to In re Motels of America, Inc., 146 B.R. 542, 544 (Bankr. D. Del. 1992), does not advance their argument.  In that case, the bankruptcy court's final determination turned on the fact that there was "no evidence showing [the corporation] was impaired when the agreement was formed, or at any subsequent pre-petition time."  Id. (emphasis added).  As the Ninth Circuit noted in Qintex, the "Motels of Am. court did not fully discuss the issues necessary to resolve the instant case, and instead denied the challenge on a purely factual ground."  8 F.3d at 1357.

that a holder of a guaranty is a creditor of a corporation and therefore stands in a different relationship to a corporation than does a stockholder. As the present case involves only a "straightforward executory contract[] to purchase stock from a corporation's shareholders," <u>Reliable Manufacturing</u> does not apply. <u>Id.</u> at 1002.[6]

### IV. Conclusion

For the reasons set forth above, the Court denies Plaintiffs' partial motion for summary judgment [#25] and grants Defendant's cross-motion for summary judgment [#30]. Plaintiffs' motion to strike the Affidavit of Peter J. Cossman [#37] is moot.

The Clerk of Court is directed to close this case. Any pending motions are moot.

```
         SO ORDERED.
Dated:   New York, New York
         September 14, 2007
```

_____
Kimba M. Wood
United States District Judge

---

[6] Plaintiffs attempt to bring this dispute within the exception to Del. Code Ann. tit. 8, § 160 arguing that the Mandatory Redemption Provision was given "in consideration for" the stock. (Pls.' Mem. Opposing Summ. J. 4-5.) Plaintiffs' attempt to characterize the Mandatory Redemption Provision as "partial consideration" for the stock cites no authority and has no discernible legal basis.